UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DENNIS MICHAEL SALERNO,

        Petitioner,                              Case No. 1:05-cv-344

v.                                                   Honorable Richard Alan Enslen

STATE OF MICHIGAN,

        Respondent.

_____/                  **OPINION**

       This matter is before the Court on Petitioner Dennis Michael Salerno's Objections to United States Magistrate Judge Ellen S. Carmody's Report and Recommendation of January 10, 2007 ("Report"), which recommended denial of Salerno's Petition for Writ of Habeas Corpus. The Court reviews the Report, Petitioner's Objections, and pertinent portions of the record *de novo* in accordance with 28 U.S.C. § 636(b)(1)(B).

**I.    BACKGROUND**

       This habeas corpus action is brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was sentenced to a term of life imprisonment without the possibility of parole after he waived his right to a jury trial, and the trial judge convicted him of a single count of premeditated first degree murder. Petitioner appealed his conviction as of right to the Michigan Court of Appeals and raised the same two issues as raised in his application for habeas relief.[1] The Michigan Court of

---

[1] Petitioner's stated grounds for relief are: (1) Petitioner's first-degree murder conviction should be reversed where the prosecutor failed to produce sufficient evidence to establish beyond a reasonable doubt that the murder occurred in the State of Michigan; and (2) Petitioner's Fourth Amendment rights were violated when police officers exceeded the scope of the search warrant and seized a computer-generated letter purposefully written by Petitioner's wife.

Appeals rejected all of Petitioner's arguments and affirmed his conviction and sentence in an unpublished opinion on February 24, 2004. Petitioner filed a *pro per* application to the Michigan Supreme Court raising the aforementioned claims, and alleging a third claim regarding a discovery violation. Because the Michigan Supreme Court was not persuaded that the questions presented should be reviewed, Petitioner's *pro per* application for leave to appeal was rejected by an order on August 31, 2004.

## II. CONTROLLING STANDARDS

Under 28 U.S.C. § 2254, a prisoner that was convicted by a state may apply for habeas corpus relief in federal court. Since 1996, habeas relief has been limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, which provisions are applicable to this case. The AEDPA ensures that "state court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA provides in pertinent part that an application for writ of habeas corpus may only be granted when the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Under this statute, a state court's decision may only be overturned in three instances: (1) the adjudication resulted in a decision "contrary" to federal law; (2) an "unreasonable application" of federal law; or (3) an "unreasonable determination of the facts." Under the controlling case law, a state court decision is "contrary to" federal law only when it "arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005). A state court decision is an "unreasonable application" of federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

The AEDPA requires a heightened level of respect for a state's factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Factual findings made by the state court, or by state appellate courts based upon the trial record, are presumed to be correct, but may be rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Biros*, 422 F.3d at 386; *Bugh v. Mitchell*, 329 F.3d 496, 500 (6th Cir. 2003).

**III. ANALYSIS**

Petitioner raises a multitude of objections (numbering 1 through 61) to the Report which fall within six general categories: (1) the Magistrate Judge inaccurately reported the facts in the Procedural History section of the Report (Objs. 2, 18, 24); (2) the Magistrate Judge erred both in applying the legal standards for an insufficiency of evidence claim (Objs. 11, 13, 16, 40-42, 59); (3) the Magistrate Judge erred in finding that the evidence presented at trial was sufficient to support the state's findings (Objs. 1, 3, 4, 6-12, 14, 15, 18-21, 23, 26, 28-31, 34, 35, 37-39, 41, 43, 53); (4) the Magistrate Judge erred in finding that Petitioner's Fourth Amendment claim is barred from habeas corpus review because the state did not give Petitioner full and fair opportunity to litigate the claim (Objs. 36, 44, 45, 46, 48, 56, 60); (5) the prosecutor's unprofessional conduct during trial adversely

affected Petitioner's defense (Objs. 4, 54); and (6) Petitioner's motion for appointment of counsel was improperly denied (Objs. 25, 27, 55).[2]

1.   Procedural History

This Court adopts the lengthy recitation of facts contained in the Report, which it deems accurate. While Petitioner has raised objections to the Magistrate Judge's recitation of the facts, after a review of the record, no prejudice has been shown. Although it is true that Patricia Rizzi's testimony regarding the victim's fear of Petitioner in 1998 was stricken at trial, the recitation was otherwise accurate and this detail did not adversely affect any conclusion reached in the Report.[3] As such, the objection is denied.[4]

2.   The State's Factual Findings

Petitioner contends that the Magistrate Judge erred in determining which legal standards govern an insufficiency of evidence claim. Specifically, Petitioner objects to the Magistrate Judge's application of deference to the State courts' factual findings. Petitioner alleges that such deference is not well placed as the trial court outcome would be debatable among reasonable jurists.

---

[2] After review of the record and cases cited to, objections 5, 17, 32, 33, 47, 49, 50, 52, 57, 58, and 61 are patently frivolous and without merit; therefore, the Court declines to address them specifically. Further, objection 22 will not be addressed because the Magistrate does not state that Petitioner failed to state a federal claim, but that his federal claim is without merit. Objection 51 will not be addressed because the harmless error rule does not apply in situations like the one at bar, but rather where a court has pre-determined that despite a Constitutional violation, evidence will be admitted because the error is harmless.

[3] While Ms. Rizzi did testify that the victim feared Petitioner, several other witnesses whose testimony was not stricken likewise testified to this fact.

[4] Petitioner has also lodged other objections regarding word choice used by the Magistrate Judge (*i.e.,* "cushion" rather than "throw pillow," and "application" rather than "letter"). These objections are unrelated to the Magistrate Judge's reasoning and analysis, nor do they affect the accuracy of the factual recitation.

As stated previously, this action is governed by the AEDPA. The Magistrate Judge was correct in stating that the AEDPA requires heightened respect for state factual findings. A state court's determination of a factual issue is presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has the burden of rebutting the presumption by coming forward with clear and convincing evidence. *Id.*

In Petitioner's objections, he merely suggests alternative interpretations of the same evidence the Magistrate Judge and Michigan courts already considered before determining there was sufficient evidence to prove guilt and venue beyond a reasonable doubt.[5] Petitioner has not come forward with any new evidence showing that the State's factual findings were erroneous. Therefore, Petitioner's objections fall short of the clear and convincing standard required to rebut the presumption of correctness. *See Armstrong v. Morgan*, 372 F.3d 778, 783 (6th Cir. 2004). As Petitioner did not meet his burden of proof, the Magistrate Judge correctly concluded that those findings shall be given deference.[6]

3.      Sufficiency of the Evidence Presented at Trial

Petitioner contends that the evidence presented at trial was insufficient to establish either guilt or venue beyond a reasonable doubt. Specifically, Petitioner claims he is entitled to relief because despite several searches conducted in the victim's apartment, car, and van, the evidence presented at trial did not prove where or when the victim died, or that Petitioner killed her.

---

[5]The Court finds Petitioner's objection 42 to be completely frivolous, and therefore will not address it here. Transcripts of the taped testimony have been included in the Rule 5 materials and this Court has reviewed the record in its entirety.

[6]The Court notes Petitioner's objection 20 is without merit because the undeveloped film was eventually developed into photographs that tended to support the prosecutor's theory of motive.

The standard of review for a challenge to sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact *could* have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). [emphasis added][7]  This Court does not resolve conflicts in testimony, weigh evidence, or draw inferences from basic to ultimate facts in order to determine whether it believes, in its independent judgement, that guilt and venue were proven beyond a reasonable doubt. *Id*. The trial court's role as finder of fact is preserved by the deference given to the state court's factual findings, and by this Court viewing the evidence presented at trial as a whole, in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 318-19.

Requiring proof beyond a reasonable doubt does not mean the prosecution has an affirmative duty to rule out all possible hypotheses other than guilt. *Jackson*, 443 U.S. at 326; *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984); *Holland v. United States*, 348 U.S. 121, 139-40 (1954).[8] A conviction may be based entirely on circumstantial evidence if it is persuasive enough. *Stone*, 748 F.2d at 362.

In this case, the record, when viewed as a whole, supports that a rational trier of fact could find beyond a reasonable doubt that Petitioner murdered the victim, Michelle Rizzi Salerno ("Michelle"), in Ingham County. According to the State's findings, Thomas Huff ("Huff") testified that while he and Petitioner were simultaneously incarcerated in Wood County Jail, Petitioner told

---

[7]Although venue is not an element of open murder, the prosecution has the burden of proving venue beyond a reasonable doubt in every criminal case. *People v. Fisher*, 559 N.W.2d 318, 324 (Mich. 1996); Mich. C.J.I.2d § 3.10 (I.C.L.E. § 2006 ed.).

[8]The cases cited in Petitioner's objection 11 regarding circumstantial evidence are not binding on this Court, as are the cases cited to herein.

Huff that he murdered his (Petitioner's) boyfriend ("Larry") and wife (Michelle). (Tr. IV, 426-27.) Huff further testified that Petitioner confessed he murdered Michelle in Lansing, Michigan. (*Id.*) Although Petitioner objects to any reliance on Huff's testimony, the trial court found his testimony credible. This Court may not review credibility determinations; therefore, Huff's testimony is considered sufficient evidence of both guilt and venue. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993) (holding a habeas court may not review issues of credibility).

In addition to Huff's testimony, there is an overwhelming amount of circumstantial evidence that supports the state's findings: the timing of the victim's disappearance (Tr. I, 131); the timing of Petitioner's purchase of Greyhound bus tickets (Tr. II, 272; Tr. III, 350-51); the fact that Petitioner was inside the victim's car after they separated (Tr. III, 303); the fact that Petitioner broke into the victim's apartment several times (Tr. III, 308); the fact that the lock on the victim's apartment had been tampered with (Tr. II, 246-47; Tr. III, 322); the fact that the victim's body was minimally clothed when discovered (Tr. III, 295; Tr. IV, 383-84); and the fact that the victim feared Petitioner, and would not have voluntarily left her apartment with him (Tr. I, 33-38, 82, 89, 91, 94-95, 97, 112-13; Tr. II, 232, 234, 244-45; Tr. III, 306-08). When the record is examined as a whole, it provides sufficient circumstantial evidence that Petitioner killed the victim inside her apartment on June 30, 2000. When viewed in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Petitioner murdered the victim in Ingham County, thereby establishing venue.

Petitioner has failed to meet his burden of proving an insufficiency of evidence claim. Therefore, this objection is denied.

4.      Fourth Amendment Claim

Federal habeas review is not available for a state prisoner's Fourth Amendment claim unless the state has failed to provide full and fair opportunity for the prisoner to litigate the claim. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Petitioner contends that the Magistrate Judge erred in finding his Fourth Amendment claim is barred from habeas review: he argues that the state did not give him full and fair opportunity to litigate the claim.

In order to determine whether a habeas court should review a Fourth Amendment claim, the Court must first conduct a two-part inquiry. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). First, the Court "must determine whether the state procedural mechanism, in the abstract, presents an opportunity to raise a fourth amendment claim." *Id.* "Second, the Court must examine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.* If the state adjudication meets both prongs of the two part test, then the Fourth Amendment claim is barred from habeas review. *Id.*

Whether Michigan provides, in the abstract, a procedural mechanism for full and fair litigation of a Fourth Amendment claim is not in question because Michigan's mechanism is clearly adequate. Michigan allows Fourth Amendment claims to be raised before trial and later appealed. Since the Supreme Court's ruling in *Mapp v. Ohio*, 367 U.S. 643 (1961), Michigan courts have consistently suppressed evidence obtained in violation of the Fourth Amendment. As Michigan applies the federal exclusionary rule to the fruits of unconstitutional search and seizure, the Court holds that Michigan adequately provides full and fair opportunity to litigate a Fourth Amendment claim. *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).

Although Michigan's procedural mechanism does present the opportunity to raise a Fourth Amendment claim, Petitioner contends that the presentation of his claim was frustrated by a failure of that mechanism. Petitioner claims the Michigan Court of Appeals misstated facts in its unpublished opinion. Therefore, he argues, the court failed to conduct a full review of his claim. Specifically, Petitioner objects to a quotation included in the Court of Appeal's unpublished opinion that was taken from the trial court's findings, stating that the PPO found in his storage unit was signed by the victim.

In Michigan, appellate courts are to review trial court's factual findings regarding a motion to suppress for plain error. *People v. Attebury*, 624 N.W.2d 912 (2001). In this case, the Court of Appeals affirmed the trial court's finding that the PPO letter fell under the "plain view" exception of the exclusionary rule. Under this exception, police officers are permitted to seize intrinsically suspicious evidence inadvertently discovered during a lawful search, so long as there is probable cause at the time of discovery to believe the evidence is incriminating. *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971).

It is undisputed that the police officers had a warrant to search the storage unit for documents produced by Petitioner. While searching the unit, the officers discovered a PPO letter dated June 29, 2000, with the victim's name typed at the bottom. Regardless of whether the letter was actually signed by the victim, it would be immediately apparent that the letter was suspicious evidence regarding her disappearance. To argue that a PPO letter found in Petitioner's storage unit, written by the victim just one day prior to her disappearance, was anything other than suspicious evidence regarding her disappearance would be unreasonable.

Because the PPO letter was intrinsically suspicious regardless of whether it was signed, the Petitioner's objection to the accuracy of the Court of Appeal's decision is unpersuasive. Furthermore, there is no reason to believe that state courts are any less capable of hearing Fourth Amendment claims than this Court. Because Michigan provides for a mechanism to litigate Fourth Amendment claims and in this case, there was no failure of that mechanism, Petitioner's Fourth Amendment claim is barred from habeas review. Petitioner's objection is denied.[9]

5.      The Prosecutor's Conduct

Petitioner contends that the prosecutor's unprofessional conduct during opening and closing statements during trial adversely affected his defense. Specifically, Petitioner objects to the prosecutor vouching as to the credibility of Huff's testimony during closing arguments, when he stated:

> Bottom line, though, is he's (Huff) out now. He is showing up here. I mean, this is a guy from Ohio that comes up here without some sort of judicial order to appear that went through this court and an Ohio court. He appeared voluntarily, and he's telling the truth about what the Defendant said, which is a little bit of truth and a little bit of falsehood and typical fashion from criminal defendants.

(Tr. V, 575.) In order to warrant habeas relief, the prosecutor's statements must be "so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process depravation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999).

In analyzing cases of alleged prosecutorial misconduct, the Court must conduct a two-part inquiry by first determining whether the prosecutor's remarks were improper, and if so, whether the

---

[9]The Court recognizes that Petitioner objects to the Magistrate Judge categorizing the letter as cumulative evidence. Although the letter may not be cumulative evidence of the victim's neighbor, Jason Cacchia's testimony regarding a specific PPO letter prepared by the victim, it is cumulative evidence of several other witnesses' testimony regarding the victim's fear of Petitioner and the fact she was seeking a PPO from him at the time of her disappearance.

misconduct affected the trial outcome. *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006). To determine whether the comments affected the trial outcome, the Court must consider four factors: "(1) the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused, (2) whether they are isolated or extensive, (3) whether they were deliberately or accidentally placed before the jury, and (4) the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

Although it is well-settled law that the prosecutor must refrain from interjecting personal beliefs into the presentation of the case, the constitutional line drawn in prosecutorial misconduct cases is necessarily imprecise. *United States v. Young*, 470 U.S. 1, 8-9 (1985); *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974). During his closing argument, the prosecutor stated that Huff, a witness, was telling the truth. (Tr. V, 575.) Although the prosecutor did not specifically state that he or the government would vouch for Huff's credibility, his remarks were simply a masked implication of such personal beliefs. On the other hand, the Court notes that the prosecutor's remarks were made in response to defense counsel's attack on Huff's credibility. (Tr. V, 564-66.) This does not excuse any prosecutorial misconduct; however, it does serve to mitigate the severity of harm. *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). It is debatable whether the prosecutor's comments constitute misconduct.

Regardless of whether the remarks were improper, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Assuming *arguendo* the truth of Petitioner's allegation of prosecutorial misconduct, Petitioner has still failed to show such misconduct prejudiced him during his bench trial. In cases such as the one at bar, where Petitioner has waived

his right to a jury trial, "a showing of prejudice is more difficult." *Keyes Fibre Co. v. Packaging Corp. of Am.*, 763 F. Supp. 374, 376 (N.D. Ill. 1991). Unlike a jury, a trial judge acting as the finder of fact is presumed to have knowledge of the law and to rely only upon the actual evidence presented in rendering a verdict. *United States v. Joseph*, 781 F.2d 549, 552 (6th Cir. 1986); *United States v. Foley*, 871 F.2d 235, 240 (1st Cir. 1989); *United States ex rel. Placek v. Illinois*, 546 F.2d 1298, 1304 (7th Cir. 1976); *People v. Taylor*, 628 N.W.2d 55, 63 (Mich. 2001); *People v. Farmer*, 186 N.W.2d 779, 780 (Mich. 1971).

Additionally, the Court notes that even if Petitioner had not waived his right to a jury trial, based on the four factors mentioned above, the alleged misconduct would not rise to a level warranting reversal. The prosecutor's comment was isolated and certainly not extensive. Further, the strength of the competent proof to establish guilt was overwhelming in this case. Because Petitioner waived his right to a jury trial, the prosecutor's comment was isolated, and the evidence of Petitioner's guilt presented at trial was overwhelming, the prosecutor's comments do not constitute misconduct so egregious to render the entire trial fundamentally unfair. Thus, Petitioner's objection is denied.

6.  Motion for Appointment of Counsel

Finally, Petitioner contends his motion for appointment of counsel was improperly denied as to this habeas action. In a civil action, appointment of counsel is not a constitutionally guaranteed right, but rather a privilege. *Douglas v. Maxwell*, 357 F.2d 320, 321 (6th Cir. 1966); *Lavado v. Keohane*, 992 F.2d 601, 604-06 (6th Cir. 1993). In a habeas action, appointment is made only when an evidentiary hearing is heard or when "justice so requires." 18 U.S.C. § 3006A(a)(2)(B); 28 U.S.C. § 2254, Rule 8(c). The Court has discretion in deciding whether to appoint counsel. *Lavado*, 992

F.2d at 604. In order to determine whether justice requires appointment, courts consider the merit of the petitioner's claims, the action's complexity, and the petitioner's ability to present his case. *Henry v. City of Detroit Manpower Dep't.*, 763 F.2d 757, 760 (6th Cir. 1985).

After considering the merits of Petitioners claim, his ability to investigate crucial facts, the likelihood of success had he been appointed counsel, and the complexity of the action, the Court cannot find that the denial of counsel resulted in fundamental unfairness impinging on his due process rights. Furthermore, the issues raised in Petitioner's petition for habeas relief have already been litigated in the Michigan Court of Appeals with the assistance of appointed counsel. Because justice does not require granting his motion for appointment of counsel, the Court finds that Petitioner's motion for appointment of counsel was properly denied.

7.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must also assess whether to grant the issuance of a certificate of appealability to Petitioner. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) (holding that § 2253 analysis may be done at the time the claim for relief is determined). Under the statute and United States Supreme Court's determinations in *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) and *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983), a certificate shall issue if the resolution of the petition is debatable among reasonable jurists or adequate to deserve encouragement for some other reason. Furthermore, the analysis of the sufficiency of the claims must be individually directed to the substance of the constitutional claims asserted. *Murphy v. Ohio*, 263 F.3d 466-67 (6th Cir. 2001); *Porterfield v. Bell*, 258 F.3d 484, 486 (6th Cir. 2001).

Upon review, this Court finds that reasonable jurists would not find Petitioner's positions debatable with respect to the substantive grounds for denying relief as to all issues asserted. Accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated in the Report and this Opinion, the Court will deny Petitioner Dennis Michael Salerno's Objections, adopt the Report and Recommendation, and deny Petitioner's Petition for Writ of Habeas Corpus.

A Final Order consistent with this Opinion shall issue.

Dated in Kalamazoo, MI:        /s/Richard Alan Enslen  
July 27, 2007       Richard Alan Enslen  
      Senior United States District Judge